AUSA: Patrick R. Moroney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

KAREEM ADAMS,

Defendant.

# 24 MAG 1773

## SEALED COMPLAINT

Violations of 18 U.S.C. §§ 922(g)(1) and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

ROSANNA CORRADO, being duly sworn, deposes and says that she is a Special Agent with the Department of Homeland Security – Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Possession of Ammunition After a Felony Conviction)

1.      On or about April 25, 2024, in the Southern District of New York and elsewhere, KAREEM ADAMS, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed ammunition, to wit, nine-millimeter Xtreme cartridges, and the ammunition was in and affecting commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.      I am a Special Agent with HSI, and I have been personally involved in the investigation of the charges described above.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, and my examination of reports, video, and other records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.      Based on my review of surveillance video and of New York City Police Department ("NYPD") records, as well as my conversations with other members of law enforcement, I have learned the following:

a.      Shortly after 9:00 p.m. on April 25, 2024, multiple 911 callers reported that shots had been fired in the vicinity of West 25th Street and 9th Avenue in Manhattan.  When members of the NYPD responded, they recovered six spent 9-millimeter shell casings in front of

415 West 25th Street ("Building-1"). Building-1, which faces onto West 25th Street, is a large apartment building that is part of a New York City Housing Authority complex.

b.      Surveillance video shows that, moments before the 911 calls were made, an individual (the "Shooter") walked east on West 25th Street toward 9th Avenue. The Shooter was wearing what appears to be a grey hooded sweatshirt underneath a black jacket with a light hood, light-colored pants, white sneakers, and a dark-colored baseball cap. As the Shooter walked past Building-1, he appeared to point an object upwards, and multiple flashes—which appear to be consistent with muzzle flashes from the barrel of a gun as it is fired—can be seen from the object in his hand. At the same time, two other individuals walking towards the Shooter on the sidewalk immediately turned and ran away. Below are still images of the Shooter walking (left and middle) and firing (right):

  

c.      Video footage shows that, after firing the rounds, the Shooter made a left to walk north through a parking lot located alongside Building-1, then made another left to walk east on West 26th Street. The Shooter then entered another building in the housing complex, 428 West 26th Street, joined by two other individuals, and got inside the elevator, as shown below:

2



4.    As detailed below, I am familiar with KAREEM ADAMS, the defendant.  Based on that familiarity and my review of surveillance video surrounding the April 25 shots-fired incident (the "April 25 Shooting"), I believe that ADAMS is the Shooter.

a.    I was involved in investigating an incident that took place on December 19, 2023, in which another individual shot ADAMS in the leg while ADAMS was standing in front of Building-1—feet away from where the individual I believe to be ADAMS fired the shots on April 25, 2024.  As part of that earlier investigation, I reviewed significant amounts of video surveillance depicting ADAMS, including ADAMS' treatment by paramedics for his gunshot wound.  I also reviewed law enforcement photographs of ADAMS in connection with the investigation.

b.    About one month later—on January 17, 2024—ADAMS was arrested and charged in an unrelated case in New York County Criminal Court with assault in the second degree.  In connection with that arrest and post-arrest processing at the NYPD's 10th Precinct, I interacted with ADAMS at close proximity and for a sufficient period of time to observe him clearly.

c.    On April 18, 2024, I and other members of law enforcement conducted surveillance of the individual whom I believe to be ADAMS and captured the following

3

photographs of him in the vicinity of Building-1 (top left and bottom left images below), which are shown alongside images of the shooter (top right and bottom right images below) and a mugshot of ADAMS (bottom center image):








5.      Based on my discussions with an undercover member of law enforcement (the "UC") and my review of cell phone records and video surveillance, I have learned the following:

a.      On three occasions in March and April 2024, the UC communicated with a phone number with area code 917 (the "Adams Phone") about meeting to purchase narcotics.  The

UC then traveled to the vicinity of Building-1 and then met the same individual on each occasion and purchased "zips" or "twists" that appeared to be crack cocaine, spending several hundred dollars over the course of the purchases.  When the UC was shown a photograph of KAREEM ADAMS, the defendant, UC identified ADAMS as the person who sold the UC the suspected crack cocaine.[1]

   b.  On March 15, 2024, the Honorable Stewart D. Aaron issued a warrant directing, among other things, that the service provider for the Adams Phone provide prospective cell site information.[2]  I believe that the Adams Phone is used by ADAMS because subscriber records show that the Adams Phone is subscribed to an address that is associated with ADAMS in criminal history records, and because the Adams Phone appears to have been used by the individual whom the UC identified as ADAMS.

   c.  Based on my review of cell site data, I know that, within about one minute of the April 25 Shooting, the Adams Phone was within an approximately 400-meter radius of where the April 25 Shooting took place.

   d.  I have also reviewed video footage from another New York City Housing Authority building ("Building-2"), which is located in the northern part of Manhattan, over five miles from Building-1.  On May 2, 2024, an individual whom I believe to be ADAMS was shown on surveillance building entering and leaving an apartment in Building-2, wearing what appears to be the same jacket and sneakers that ADAMS wore during the April 25 Shooting.  A still image from ADAMS on May 2, 2024, is shown below on the left, along with a still image of the Shooter from April 25, 2024, on the right.  Location data from the Adams Phone was consistent with ADAMS' presence at Building-2 on May 2 when ADAMS was captured on video there.

 

---

[1] The laboratory test results for these substances are pending.

[2] On May 1, 2024, the Honorable Barbara C. Moses renewed the warrant that Judge Aaron signed.

6.      Based on my review of NYPD records, I know that several of the nine-millimeter spent shell casings recovered from the April 25 Shooting were branded Xtreme (the "Xtreme Casings"). Based on my communications with an expect from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, I know that the Xtreme Casings were manufactured outside the State of New York.

7.      Based on my review of criminal history records, I have learned the following:

a.      On or about October 10, 2018, KAREEM ADAMS, the defendant, was convicted in New York County Supreme Court of assault in the second degree, in violation of New York Penal Law Section 120.05(6). On or about December 12, 2018, ADAMS was sentenced to 78 months' imprisonment and five years' post-release supervision.

b.      On or about February 25, 2011, ADAMS was convicted in New York County Supreme Court of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39(1). On or about March 24, 2011, the defendant was sentenced principally to two years' imprisonment. Additionally, on or about February 25, 2011, ADAMS was separately convicted in New York County Supreme Court of criminal possession of a weapon in the second degree, in violation of New York Penal Law Section 265.03(1)(b), and sentenced on or about March 24, 2011, to a six-year concurrent term of imprisonment, the execution of which term of imprisonment was stayed.

c.      On or about June 8, 2006, ADAMS was convicted in New York County Supreme Court of criminal sale of a controlled substance in the fourth degree, in violation of New York Penal Law section 220.34. On or about the same date, ADAMS was sentenced principally to two years' imprisonment.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of KAREEM ADAMS, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Rosanna Corrado (by GS w/ permission)
ROSANNA CORRADO
Special Agent, HSI

Sworn to me through the transmission of this
Complaint by reliable electronic means (telephone), pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this
6th day of May, 2024

_____
THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York

6